UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ALBERT JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 3:17-cv-00061-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JOHN TILLEY, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case asks who, if anyone, is liable for leaving Mr. Albert Jones incarcerated for over six months beyond the expiration of his sentence?  Mr. Jones argues that various employees of the Commonwealth of Kentucky violated his constitutional rights and falsely imprisoned him by failing to release him from incarceration on the proper date and that each is liable to him in their individual capacities.  [R. 1.]  Defendants, in turn, argue within their Second Motion for Summary Judgment that they are shielded by qualified immunity and that they did not falsely imprison Mr. Jones.  [R. 101.]  As explained below, so far only two of the Defendants enjoy immunity.  Consequently, the Court both **GRANTS IN PART AND DENIES IN PART** Defendants' Motion [R. 101.]

I

In 2007, Mr. Albert Jones was charged with having committed bank robberies in both Indiana and Illinois and was subsequently detained in Indiana.  [R. 101-1 at 1.]  On January 28, 2008, Mr. Jones was indicted for having also committed a bank robbery in Kentucky.  [R. 106-3.]  That same day, Judge Brian C. Edwards, a Circuit Court Judge in Jefferson County,

Kentucky, issued a warrant for Mr. Jones's arrest.  [R. 106 at 2.]   Despite his Kentucky warrant, however, Mr. Jones remained incarcerated in Indiana.  [R. 101-1 at 1.]  And while still in the custody of Indiana, Mr. Jones was sentenced to sixty-three months of incarceration in federal court in Illinois on May 15, 2009.  [R. 101-6.]  Soon after, Mr. Jones was sentenced to forty-two months of incarceration in Indiana.  [R. 101-1 at 2; R. 101-2.]  Mr. Jones remained in the custody of Indiana until August 14, 2009, when he was granted parole.  At that time, Mr. Jones's federal sentence commenced.  [R. 101-1 at 2.]

In 2010, after beginning his federal sentence, Mr. Jones appeared, for the first time, before Judge Edwards in Kentucky.  [R. 106 at 2.]  Because Mr. Jones "waived a pre-sentence investigation report and separate sentencing," he was sentenced that same day to a ten-year term of custody within the Kentucky Department of Corrections, to run concurrent to his currently-being-served federal sentence.  [R. 101-1 at 2; R. 106 at 3.]  But, consistent with his plea agreement, Judge Edwards ordered that Mr. Jones "be given credit for time that [he had] spent in custody since January the 28th of 2008," the date his Kentucky arrest warrant was issued.  [R. 106 at 3.]  Nonetheless, Judge Edwards's later-entered Judgment of Conviction and Sentence did not indicate that Mr. Jones was to be awarded jailtime credit from January 28, 2008, and instead, simply relegated the duty to calculate proper jailtime credit to the Kentucky Department of Corrections, Division of Probation and Parole.  [R. 106 at 4.]

In June 2010, Heather Foster of the Division of Probation and Parole prepared Mr. Jones's Pre-Sentence Investigation Report.  [R. 101-1 at 2.]  Although Ms. Foster deemed Mr. Jones eligible to receive credit for the time spent concurrently serving his federal and Kentucky sentence, she found, despite the plea agreement and Judge Edwards's statement on the record indicating otherwise, that Mr. Jones "was not eligible under KRS 532.120(3) for any jail credit

for time served prior to his sentence because he was serving a sentence as a result of his Indiana criminal conviction." *Id.* Accordingly, Mr. Jones was only granted 1,670 days of credit instead of 2,234 days of credit, per his calculation. [*See* R. 106 at 4.] This difference in credit affected both Mr. Jones's parole eligibility date and full sentence-completion release date.[1] *Id.*

In March 2014, Mr. Jones completed his federal sentence and entered Kentucky custody. *Id.* at 5. At that time, Mr. Jones "realize[d] KDOC had not given him the promised credit," and began writing to KDOC employees to correct the error. *See id.* First, Mr. Jones wrote to Ms. Foster, who responded that she could not address his concern because his jail time credit had been calculated properly and that he could not receive jail time credit while serving time in another jurisdiction. *Id.* She then recommended Mr. Jones contact the KDOC Offender Information Services to address whether he had received proper credit owed to him due to his federal and Kentucky sentences running concurrently. *Id.* at 5 (referencing [R. 106-11]). Around this same time, Mr. Jones contacted his prison's warden, Don Bottom, "about his concern that he had not received appropriate credit." [R. 106 at 6.] Mr. Jones describes Mr. Bottom's response as "it is what it is, you know, deal with it [...] through the channels," and a suggestion that he file for administrative review. [*See* R. 106-10 at 25.] But aside from his recommendation to file for administrative review, Mr. Jones contends that Mr. Bottom "refused to take any action." [R. 106 at 6.]

Upon the recommendation of both Ms. Foster and Mr. Bottom, Mr. Jones filed an Administrative Review Form with the KDOC Offender Information Services. [R. 106-12.] In response, Mr. Jones received three letters. First, Mr. Jones was contacted by an OIS staff

---

[1] Plaintiff indicates that Ms. Foster's "calculation moved [his] 85% [parole eligibility] date from July 28, 2016, to February 14, 2018, a nearly 19-month difference." [R. 106 at 5.]

member who indicated that she had corrected his parole eligibility date to January 2017 but provided no explanation as to why his jailtime credit had not been applied (which would have rendered his parole eligibility date to July 2016).  [R. 106 at 6; R. 106-12 at 2, 9.]  After appealing this initial decision, Mr. Jones next received a letter in November 2014 from Robert Belen, an OIS Administrator acting as an Assistant Branch Manager.  [R. 106 at 6; R. 106-13.] Within his letter, Mr. Belen indicated that Mr. Jones's "time did not start in 2008 as [he stated]." [R. 106-13.]  Consequently, Mr. Belen concluded that Mr. Jones's jailtime credit of zero days had been correctly calculated by Ms. Foster and that his credit of 1,670 days for his time spent serving his concurrent federal and Kentucky sentences, dating back to August 14, 2009, had been applied properly.  *See id.*  Mr. Belen then reversed his subordinate's parole eligibility "correction" and provided that both Mr. Jones's parole eligibility and sentence completion date fell between February and June 2018.  [*See id.*; R. 101-1 at 3.]

In response, Mr. Jones replied to Mr. Belen by letter, explained that Mr. Belen's "correction" required him to remain imprisoned an additional nineteen months, and requested his assistance either correcting the error or "point[ing] [him] in the right direction" to have the issue resolved.  [R. 106 at 7.]  Mr. Belen did not respond.  Finally, in March 2015, Mr. Jones received a letter from Andrea Bentley, a second OIS Administrator.  [R. 106 at 7; R. 106-14.]  In her letter, Ms. Bentley informed Mr. Jones that his sentence had been properly calculated and that he was "not entitled to any other time."  [R. 106-14.]  Because Mr. Jones had finally exhausted his administrative remedies, however, Ms. Bentley informed him that he could "challenge [her] decision by motion made in the sentencing court" pursuant to KRS § 532.120(8).  *Id.*

In April 2015, Mr. Jones filed a motion before Judge Edwards requesting his jailtime credit be properly awarded.  [R. 106-16.]  In response, Judge Edwards ordered Ms. Foster to

4

recalculate Mr. Jones's jail time credit.  [R. 106-17.]  In accordance with Judge Edwards's order, Ms. Foster recalculated and, once more, concluded that Mr. Jones should be awarded no jail time credit.  [R. 106 at 8.]  After Ms. Foster had replied to Judge Edwards, however, no order was entered "requiring the Department of Corrections to give additional sentence credit." [R. 101- at 4.]  But, in August 2016, Mr. Jones filed a second motion before Judge Edwards.  [R. 101-18.]  This time, although the Commonwealth requested sixty days to respond, the state court record does not include any filed response.  [R. 106-20.]  With no response having been filed, Judge Edwards granted Mr. Jones's motion on February 21, 2017.  [R. 106-21.]  In his February 2017 order, Judge Edwards ruled that Mr. Jones be given "custody credit time […] for all the time spent in custody beginning January 28, 2008." *Id.*  And although Mr. Jones received a copy of Judge Edwards's order on February 23 and alleges that he immediately informed prison officials, he was not released from incarceration until four days later on February 27, 2017, a date he contends to have been 215 days beyond his proper release date.  [R. 106-22.]

Now, Mr. Jones has filed suit, alleging that multiple defendants violated his constitutional rights under 42 U.S.C. § 1983 and falsely imprisoned him by failing to take action to ensure that he was released from incarceration at the expiration of his sentence.  [R. 1.]  Though this case involves a chain of actors, Mr. Jones only sues OIS Administrators Robert Belen and Andrea Bentley, the warden of Northpoint Training Center Dan Bottom, the Commissioner of the Kentucky Justice & Public Safety Cabinet John Tilley, and the Deputy Commissioner of the KDOC Kimberly Potter-Blair. *Id.* at 2-4.  In response, Defendants argue that they are shielded from liability by the doctrine of qualified immunity, that they did not falsely imprison Mr. Jones, and that summary judgment should be awarded in their favor.  [R. 101-1.]

5

**II**

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

6

**A**

In his Complaint, Mr. Jones alleges that Defendants violated his Eighth and Fourteenth Amendment rights and falsely imprisoned him under Kentucky law. [R. 1.] In response, Defendants argue that summary judgment should be awarded in their favor because they are shielded from liability by federal qualified immunity and because they did not falsely imprison Mr. Jones. [*See* R. 101-1.] The Court turns first to Defendants' argument that federal qualified immunity shields them from liability against Mr. Jones's constitutional claims under Section 1983.

Qualified immunity is a doctrine that shields government officials, including public university administrators, who perform discretionary functions from civil liability "unless their conduct violates clearly established rights." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013) (citing *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)); *see also Corbett v. Garland*, 228 F. App'x 525, 529 (6th Cir. 2007) (finding qualified-immunity defense applied to university president and reversing district court's order granting plaintiff's motion for summary judgment). The question of whether qualified immunity attaches to an official's actions "is a purely legal question for the trial judge to determine prior to trial." *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Either prong may be addressed first, depending on the circumstances of the case before the court, and both prongs must be satisfied for the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *See Pearson*, 555 U.S. at 236; *see*

*also Sumpter v. Wayne Cty.*, 868 F.3d 473, 480 (6th Cir. 2017) ("A plaintiff must satisfy both inquiries in order to defeat the assertion of qualified immunity.") (citing *Wesley v. Campbell*, 779 F.3d 421, 428-29 (6th Cir. 2015)).

The term "clearly established" means that the law was, at the time of the individual's conduct, "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful" and the law placed the constitutionality of the conduct "beyond debate." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  A legal principle must also have a "sufficiently clear foundation in then-existing precedent" and be "settled law" to be clearly established.  *Id.*  Once qualified immunity has been invoked, the plaintiff bears the burden of showing that qualified immunity is not appropriate.  *Quigley*, 707 F.3d at 681 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

**1**

Mr. Jones's right to not be detained past the expiration of his term of incarceration under the Eighth and Fourteenth Amendments is established "beyond dispute."  *Shorts v. Bartholomew*, 255 F. App'x 46, 51-52 (6th Cir. 2007) ("an incarcerated inmate has 'a liberty interest in being released at the end of his term of imprisonment'")); *see McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972); *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969) (holding that there is "no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence"); *Upshaw v. Mich. Dep't of Corr.*, 2016 Dist. LEXIS 152460 at *12 (W.D. Mich. Nov. 30, 2016). Consequently, the second prong of the qualified immunity analysis has been satisfied and the first prong is controlling.  As a result, the only issue remaining is whether the alleged facts, taken in the light most favorable to Mr. Jones, could lead a reasonable juror to conclude that the

Defendants violated Mr. Jones's constitutional rights.

To establish Section 1983 liability and determine whether Defendants violated Mr.

Jones's clearly established constitutional rights, the Sixth Circuit mandates that:

> [A] plaintiff must (1) . . . demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) . . . show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight; [and] (3) . . . demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Shorts*, 255 F. App'x at 55 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir.

1989)).  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a

municipal actor disregarded a known or obvious consequence of his action [or inaction.]"  *Id.* at

53 (alterations in original) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410,

117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

Defendants argue that they were not deliberately indifferent as related to Mr. Jones's

constitutional claim because they "calculate[ed] his sentence in accordance with the sentencing

order rather than the plea agreement" and because providing a hearing to Mr. Jones was

"exclusively a judicial function."  [R. 101-1 at 6-9.]  Although Defendants acknowledge that Mr.

Jones's plea agreement provided that he was to receive jail time credit, they argue that, because

"the original judgment contained a clerical error in omitting [this] direction," the KDOC was

bound by case law to "calculat[e] his sentence according to the plain text of the order."  *Id.* at 6.

Accordingly, the KDOC argues that it had no duty to ensure Judge Edwards's intention that Mr.

Jones receive jailtime credit was carried out.  Instead, the KDOC argues that its only duty was to

calculate Mr. Jones's sentence by application of binding law, which did not permit jailtime credit

to be awarded.  *See id.* at 6-9.  Accordingly, Defendants contend that they could not have been

deliberately indifferent when they were not permitted to alter the Judgment and simply followed the law. *See id.*

In support of their contention, Defendants first cite *Bard v. Commonwealth*, 359 S.W.3d 1 (Ky. 2011). In *Bard*, the Kentucky Supreme Court ruled that the KDOC could not reduce a Defendant's presentencing custody credit when a trial judge mistakenly granted him over 1,600 days of credit he was not owed. *See id.* at 6. In support of its finding, the Court ruled that, although the judge had sought KDOC's assistance in calculating the Defendant's owed credit, the trial court was the only organization statutorily authorized to calculate jailtime credit and that, although the KDOC was initially consulted when analyzing the amount of credit owed, it could not unilaterally alter its findings without judicial approval. *Id.* at *6 (citing KRS 532.120(1) (2009) (amended 2011)). Consequently, under *Bard*, Defendants argue that they were statutorily barred from making any alteration to Mr. Jones's jailtime credit calculation and that providing Mr. Jones a hearing "would have been an empty exercise." [*See* R. 101-1 at 7-10.]

Second, Defendants cite KRS 532.120(3) in support. *Id.* at 8. KRS 532.120(3) provides that jailtime credit only be awarded "as a result of the charge that culminate in the sentence […]." KRS 532.120(3). Accordingly, Defendants argue that they were not deliberately indifferent because Mr. Jones was not legally entitled to jailtime credit in Kentucky for his time spent in custody in Indiana. [*See* R. 101-1 at 8-9 (citing *Haney v. Wingo*, 453 S.W.2d 556, 556 (Ky. 1970) (holding that a Defendant incarcerated in Texas, who was later released into the custody of Kentucky through a "hold" order, did not qualify for jailtime credit because he was not incarcerated in Texas as a result of his Kentucky crime). And, similarly, Defendants argue that their failure to provide Mr. Jones a hearing does not constitute deliberate indifference

because "[n]either the Department of Corrections nor the Defendants, in their individual capacities, had the authority to change an existing court order." *Id.* at 10. Instead, Defendants contend that this responsibility "rest[ed] with the trial court and appellate courts with proper jurisdiction." *Id.*

In response, Mr. Jones argues that neither *Bard* nor the version of KRS 532.120 Defendants cite impact whether they were deliberately indifferent and violated his constitutional rights. [R. 106 at 19-22.] First, in opposition to Defendants' reliance on *Bard*, Mr. Jones cites *Bowling v. White*, 480 S.W.3d 911 (Ky. 2015). In *Bowling*, the Kentucky Supreme Court analyzed whether the KDOC could alter the jailtime credit awarded to a Defendant when the Defendant had been awarded too little credit, as opposed to the scenario in *Bard* where a defendant was awarded excess credit. *See id.* at 914. Upon review, the Court ruled that, per *Bard*, "[t]he judiciary ha[s] the exclusive power […] to render the sentence and to award custody credit against it" when a defendant is awarded excess jailtime credit. *Id.* at 916-18 (citing KRS 532.120(3) (2009) (amended 2011)). But, because KRS 532.120 was amended in 2011 to shift the calculation power to the KDOC, the Court concluded that "Corrections now has the responsibility for giving jail-time credit in most felony cases" and that this power "is not limited to convictions obtained after the statute was amended." *Id.* Consequently, the Court ruled that KDOC has a responsibility "to correct mistakes in failing to award jail-time credit or in awarding too little jail-time credit." *Id.*

Next, Mr. Jones argues that KRS 532.120 did not prohibit Defendants from awarding him jailtime credit, even though he was in custody in Indiana during the period of time in which Judge Edwards ordered credit be given. [R. 106 at 20-21.] In support, Defendants again cite to *Bowling*. In *Bowling*, a defendant committed robberies and murders in both Rockcastle and

11

Laurel Counties.  480 S.W.3d at 913.  Though indicted by both Counties, the defendant was tried in Laurel County first, where he was convicted.  *Id.*  Four years later, the defendant was tried in Rockcastle County.  *Id.*  Upon review, the Supreme Court cited KRS 520.120(3) and found that, despite the defendant being tried in Laurel County first, he was owed "credit for the time he had served between his arrest and initial conviction" on his later Rockcastle County conviction, because he was incarcerated due to the pendency of both cases before being convicted under the first.  *Id.* at 913-14.  Citing *Bowling* in support, Mr. Jones argues he was properly owed jailtime credit for his time spent "in custody prior to the commencement of a sentence […]."  [R. 106 at 22 (citing KRS 532.120(3)).]  But, in contravention to his reliance on *Bowling*, Mr. Jones argues that he was owed 2,234 days of total credit.  [*See* R. 106 at 4.]  Though Mr. Jones provides no explanation of his calculation, the Court surmises him to argue that he is owed 2,234 days of credit as calculated from the date his warrant was issued on January 28, 2008, until the date he began to serve his Kentucky conviction on March 11, 2014.  [*See* R. 101-1 at 2; R. 106 at 3.]

Upon review, the Court agrees with Mr. Jones.  First, *Bowling* is clear that the KDOC has a responsibility to ensure that a defendant receives proper jailtime credit when he is awarded too little credit.  480 S.W.3d at 9177.  And though Defendants are correct that, prior to 2011, it was the sole duty of the judiciary to ensure credit was calculated properly, KRS 532.120 was amended prior to the expiration of Mr. Jones's sentence and now mandates that the KDOC itself is responsible for correct calculation.  *See id.*  Additionally, Defendants' reliance on *Bard* is not dispositive because *Bowling* clearly limits the holding of *Bard* to situations in which a defendant has been granted excess jailtime credit.  *Id.*  Consequently, Defendants' argument that they had no legal authority to alter Mr. Jones's jailtime credit calculation and were thereby not deliberately indifferent to his situation, is unpersuasive.

12

Similarly, the Court agrees with Mr. Jones that *Bowling* permits the granting of jailtime credit to defendants who are incarcerated on multiple charges, even if the charges stem from crimes committed in different jurisdictions.  *See id.* at 913.  But the Court also finds that, under *Bowling*, the period of credit in which a defendant can receive jailtime credit concludes upon his first conviction related to those crimes.[2]  *See id.*  Accordingly, under *Bowling*, the Court finds that Mr. Jones was owed jailtime credit as calculated from the date of the issuance of his Kentucky warrant on January 28, 2008, through the date of his Indiana conviction on July 21, 2009.[3]  [R. 106 at 2; R. 101-2 at 2.]  And, despite Defendants' arguments otherwise, the award of this jailtime credit was not only permitted but was required by law.[4]  Consequently, Defendants cannot argue that deliberate indifference could not have occurred in this matter due to the mandates of Kentucky law.

**2**

Having found unpersuasive Defendants' argument that Kentucky law prevented them from granting Mr. Jones's request for jailtime credit, the Court next turns to Mr. Jones's argument that Defendants are not entitled to qualified immunity because there exists a genuine issue of material fact as to whether their actions constituted deliberate indifference to his plight.

---

[2] The Court notes that, in this case, Mr. Jones was convicted in Illinois federal court prior to his Indiana state conviction.  Because he did not begin to serve his federal sentence until after his Indiana sentence had been fully served, however, his first conviction under this analysis is, for all intents and purposes, his Indiana conviction.

[3] Jailtime credit for these dates equates to 540 days of credit, as opposed to Mr. Jones's calculation of 564 days.  [*See* R. 106 at 4.]

[4] Comparatively, though the Court also finds *Haney* to be controlling case law, at no time did the *Haney* defendant serve time in jail because of crimes committed in multiple states.  *See* 453 S.W.2d at 556.  Though Mr. Haney was sent to Kentucky immediately upon release from his incarceration in Texas, this transfer occurred as the result of a "hold" order, and therefore Mr. Haney's incarceration as a result of his Kentucky warrant did not begin until the "hold" order was effectuated and his custody was transferred.  *See id.*

In support, Mr. Jones relies on *Shorts v. Bartholomew*.  In *Shorts*, an inmate at a county jail was improperly incarcerated beyond the expiration of his sentence due to an incorrect calculation of his "time served."  255 Fed. App'x 46, 48 (6th Cir. 2007).  After inquiring about his situation, the Chief Jailor of his facility contacted a probation officer for assistance in determining when the inmate should be released.  *Id.*  Because the probation officer did not respond, however, the inmate remained incarcerated until he attained legal counsel.  *Id.*  After being contacted by counsel, the probation officer and jail staff disputed who was "responsible for [calculating the inmate's] release."  *Id.*  Nonetheless, the inmate was eventually released upon direction of the probation officer.  *Id.*  Despite the involvement of multiple actors, however, the inmate's lawsuit did not name the Jailor or probation officer as defendants, but instead, sought liability against a Sheriff and the County.  *See id.*  In determining whether the Sheriff was deliberately indifferent and therefore not entitled to qualified immunity, the Sixth Circuit analyzed three opinions written by two sister circuits.  255 Fed. App'x at 7-9.

First, the Court analyzed *Moore v. Tartier*, in which the Third Circuit held that, although the actions of prison staff in response to an inmate's report of excess incarceration were "slow and incompetent," the actions did not constitute deliberate indifference because they caused the judge to "clarify[] his sentence in writing."  *Id.* at 12 (citing *Moore v. Tartier*, 986 F.2d 682, 685 (3d. Cir. 1993)).  Second, the Court described *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).  In *Haygood*, the Ninth Circuit ruled that, where an inmate "presented credible evidence" of his excess incarceration to a warden, and the warden simply "passed [the evidence] off to certain records officers" who "rejected the claim out of hand and denied further review […]," adequate evidence existed "from which [a] jury could have found liability [against both the warden and record officers] under […] 'deliberate indifference.'"  *Id.* at 1355.  And third, the

14

Sixth Circuit analyzed *Sample v. Diecks*, 885 F.2d 1029, 1102-03.  In *Diecks*, a prisoner "protested his improper incarceration" to a state records officer and drafted a letter to the Commissioner of the State Bureau of Corrections.  *Id.*  Although the records officer "contacted the sentencing judge's chambers," he "admitted that he did nothing further regarding [the] case."  *Id.* at 1105.  There, because the records officer understood the prisoner's inquiry to have merit, knew that clarification was needed, understood the prisoner to be in reliance on him to correct the error, and still failed to correct the error or inform the prisoner about other action he could have taken, the Third Circuit found him deliberately indifferent.  *Id.* at 1111.  But conversely, because the Commissioner never received the prisoner's letter and was not aware of his potential overincarceration, the Circuit declined to analyze whether the Commissioner had acted with deliberate indifference.  *Id.* at 1112-13.

Ultimately, by applying the Third Circuit's three-part deliberate indifference test[5] and the holdings of the above-referenced cases, the Sixth Circuit in *Shorts* concluded that the Sheriff was entitled to qualified immunity because, like the Commissioner in *Diecks,* no evidence proved that he was aware of the inmate's overincarceration.  *Shorts*, 255 Fed. App'x at 27.  Moreover, despite not being a named defendant in the action, the Circuit held that the probation officer who failed to assist was analogous to the records officer in *Diecks* whose knowledge and lack of action caused an inmate to remain incarcerated.  *See id.*  Similarly, the Court also indicated that the Jailor in *Shorts* who took no further significant action when the probation officer failed to reply to her inquiry had "perhaps" acted with deliberate indifference.  *See id.*

---

[5] Knowledge, failure to act or ineffectual action, and causation.  *Shorts*, 255 F. App'x at 55 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)).

Upon review, through an application of the above-described relevant case law, the Court finds that qualified immunity does not shield OIS Administrators Robert Belen and Andrea Bentley or Warden Don Bottom from liability because a genuine issue of material fact exists as to whether they acted with deliberate indifference to Mr. Jones's plight.  First, Mr. Belen is not entitled to qualified immunity because his actions mirror those of the record officers in *Haygood* and the three-prong test of *Shorts* is satisfied.  First, Mr. Belen was on notice that Mr. Jones was potentially subject to incarceration beyond the expiration of his sentence.  And Mr. Belen "understood that KDOC could not release a prisoner 'one day early or one day late […]."  [R. 106 at 13; R. 106-9 at 32-33.]  Next, Mr. Belen's actions were ineffectual.  Although Mr. Belen reviewed Mr. Jones's file, he did not double-check Ms. Foster's calculation of jailtime credit, as mandated by KRS 532.120, nor did he offer Mr. Jones the opportunity for an administrative hearing.  [*See* R. 106-6 at 44; KRS 532.120.]  And, though Mr. Belen indicated at deposition that he has "contact[ed] the Office of Probation and Parole" in the past when credit calculations are disputed, he is unsure whether, in this matter, he ever contacted Ms. Foster.  [R. 106-6 at 43.]  Accordingly, Mr. Belen's lack of action is comparable to the actions of the records officers in *Haygood* who performed only a "cursory check" of a possible computational error and failed to provide a hearing to a complaining inmate.  *See Haygood*, 769 F.2d at 1355.  Consequently, there exists a genuine issue of material fact as to whether Mr. Belen acted with deliberate indifference and, therefore, an application of qualified immunity is inappropriate.

Similarly, Ms. Bentley is not entitled to qualified immunity.  Like with Mr. Belen, no record evidence indicates that Ms. Bentley verified Ms. Foster's calculation of Mr. Jones's jailtime credit was correct, despite her acknowledgment that she had a responsibility to do so.  [*See* R. 106-15 at 14.]  Accordingly, Ms. Bentley's actions are also similar to the insufficient

actions of the records officers in *Haygood*.  Furthermore, though Ms. Bentley's letters led Mr.

Jones to file before Judge Edwards, her actions did not "culminate[e] in the state court judge's

clarif[ication]."  *Moore*, 986 F.2d at 687.  Conversely, Ms. Bentley simply rejected Mr. Jones's

request which formally resulted in his administrative remedies being exhausted.  Her actions,

therefore, are not linked to the judge's clarification and, instead, the credit for clarification goes

to Mr. Jones himself, whose own relentless efforts led to his release.

Finally, Mr. Bottom is not entitled to qualified immunity.  Like the warden in *Haygood*,

Mr. Bottom simply indicated that it was not his responsibility to ensure that the sentences of

inmates under his care were calculated properly.  [*See Haygood*, 769 F.2d at 1353; R. 106-10 at

48.]  And though Mr. Bottom instructed Mr. Jones to "file [his] administrative reviews," Mr.

Jones, like the inmate in Haygood, remained incarcerated well-beyond his appropriate release

date.  [R. 106-10 at 24-25.]  Accordingly, there exists a genuine issue of material fact as to

whether Mr. Bottom acted with deliberate indifference.  Consequently, qualified immunity does

not shield him from liability.

**B**

Next, the Court turns to Defendants' arguments that neither John Tilley nor Kim Potter-

Blair can be subjected to supervisor liability.  [R. 101-1 at 10-11.]  The doctrine of respondeat

superior is not available in § 1983 actions, and a supervisory defendant is only legally

responsible for his or her own behavior.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,

173 L. Ed. 2d 868 (2009).  Therefore, "a supervisory official's failure to supervise, control or

train the offending individual is not actionable."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999).  At the very least, a Plaintiff must show that the supervisory defendant "implicitly

authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

In this matter, Defendants argue that "there is no evidence in the record that Tilley or Potter-Blair ever knew of Mr. Jones's claim that his sentence was incorrectly calculated, much less, encouraged or acquiesced in the violation of Mr. Jones's rights." [R. 101- at 10.] Specifically, Defendants point out that Mr. Tilley was never deposed in this matter, and that Ms. Potter-Blair's deposition only references Mr. Jones twice, with neither reference indicating that she was aware that Mr. Jones had complained of his sentence calculation. [R. 101-1 at 10; R, 101-22.] Accordingly, like the Commissioner in *Diecks* who lacked knowledge of an inmate's overincarceration, Defendants argue summary judgment is appropriate for both Mr. Tilley and Ms. Potter-Blair. [R. 101-1 at 10-11; *see Diecks*, 885 F.2d at 1112-1113.] Upon the briefing of Defendants, and Mr. Jones having failed to brief this issue, the Court will dismiss both Mr. Tilley and Ms. Potter-Blair from this action.

## C

Finally, the Court turns to Defendants' argument that they are entitled to summary judgment against Mr. Jones's false imprisonment claim. [R. 101-1 at 11.] In support, Defendants argue in the span of two sentences that they "could not have falsely imprisoned Mr. Jones because they were acting under a lawful, if erroneous [judicial] order [that] they were legally bound to obey." *Id.* In response, Mr. Jones argues that Defendants "had not only the authority, but the responsibility to act." [R. 106 at 24.] Because the Court has determined that the KDOC was not bound by Judge Edwards's judgment and, instead, had the responsibility to ensure his jailtime credit was appropriately calculated, the Court declines to grant summary judgment on Mr. Jones's false imprisonment claim.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby O**RDERED** that Defendants' Motion for Summary Judgment [**R. 101-1**] is **GRANTED IN PART AND DENIED IN PART** and Defendants John Tilley and Kim Potter-Blair are **DISMISSED** from this action.

This the 14th day of February, 2022.

Gregory F. Van Tatenhove
United States District Judge

19